## Hickey, Appellant, *v.* Hickey.

Argued October 3, 1939.

Before KELLER, P. J., CUNNING-HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Benjamin H. Renshaw, Jr.,* for appellant.

*Edward G. Taulane, Jr.,* for appellee.

OPINION BY KELLER, P. J., January 30, 1940:

This is an action of divorce brought by a husband against his wife on the grounds of cruel and barbarous treatment and indignities to the person. When the action was brought, the wife was confined in the Norristown State Hospital for the Insane, on the certificate of two physicians. The libel was accordingly served on a committee appointed by the court to represent the respondent. The committee appeared, filed an answer and vigorously defended the action.

The governing question is whether the libellant was a competent witness to testify to the acts of cruel and barbarous treatment and indignities to the person relied upon as grounds for divorce. The master received his testimony, found that the grounds charged in the libel had been clearly and satisfactorily established and that respondent had become hopelessly and permanently insane, and recommended the granting of a decree of divorce. With the libellant's testimony in the record, the evidence sustains the master's findings and recommendation. On exceptions to the master's report the court below ruled that under section 5, clause (e), of the Act of May 23, 1887, P. L. 158, the libellant was not a competent witness to testify to anything but the fact of marriage; that excluding the libellant's testimony the evidence was not sufficient to support a decree of divorce and dismissed the libel. The libellant appealed.

If the lower court were right in its ruling on the libellant's competency as a witness, we would be inclined to agree with its action, but a review of the relevant statutes leads us to disagree with its conclusion that the libellant was not a competent witness for all purposes.

It is our opinion that clause (e) of section 5 of the Act of 1887, supra, has no relation to actions of divorce. Clause (c) of section 5 of that act dealt with the competency of husband and wife to testify against each other generally and in actions of divorce, and provided: "(c) Nor shall husband and wife be competent or permitted to testify against each other, except in those proceedings for divorce in which personal service of the subpoena or of a rule to take depositions has been made upon the opposite party, or in which the opposite party appears and defends, in which case either may testify fully against the other, and except also that in any proceeding for divorce either party may be called merely to prove the fact of marriage." The later clause (e) dealing with cases "where any party to a *thing or contract in action*[1] is dead, or has been adjudged a lunatic and his right thereto or therein has passed either by his own act or by the act of the law, to a party on the record, who represents his interest in the controversy", did not include or apply to actions in divorce, which had been covered by the prior section. Furthermore, an action in divorce which has not progressed to a final decree, dies with the death of either party, and in 1887, when the act relating to the competency of witnesses was passed, there was no means of bringing an action of divorce against, or serving the subpoena in divorce upon, an insane spouse, although section 8 of the Act of April 13, 1843, P. L. 233, p. 235, (since repealed) authorized the filing of a libel in divorce *by* a relative or next friend of a lunatic wife. Section 5, clause (e), therefore, was not concerned with the competency of husband and wife to testify against each other generally or in divorce actions. This same distinction was observed in the first statute in this Commonwealth allowing parties in interest to be witnesses in civil proceed-

---

[1] See Brown's Estate, 131 Pa. Superior Ct. 463, 466, 467, 200 A. 940.

ings, Act of April 15, 1869, P. L. 30. It provided in section 1, as follows: "That no interest nor policy of law shall exclude a party or person from being a witness in any civil proceeding; *Provided,* This act shall not alter the law, as now declared and practiced in the courts of this commonwealth, so as to allow husband and wife to testify against each other, nor counsel to testify to the confidential communication of his client; and this act shall not apply to actions by or against executors, administrators or guardians, nor where the assignor of the thing or contract in action may be dead, excepting in issues and inquiries *devisavit vel non* and others, respecting the right of such deceased owner, between parties claiming such right by devolution on the death of such owner."

In 1905 (Act of April 18, 1905, P. L. 211), the Act of April 13, 1843, supra, was amended so as to permit an action of divorce to be brought *against* a husband or wife, who is a hopeless lunatic or non compos mentis, and directed service of the subpoena in divorce "to be made upon the committee of such lunatic." In *Baughman v. Baughman,* 34 Pa. Superior Ct. 271, where it was properly held that hopeless insanity is not ground for divorce in Pennsylvania, and that the Act of April 18, 1905, supra, did not make insanity a new ground of divorce, the opinion erroneously stated that the Act of 1905 merely extended the provisions of the Act of April 13, 1843 "to cases where the husband is a hopeless lunatic or non compos mentis, and provides for special procedure and the degree of proof required, but it goes no further." On the contrary, the Act of 1905 provided for actions in divorce *against* a husband or wife, who is a hopeless lunatic—for grounds, of course, existing before he or she became a lunatic—and directed that service of the subpoena in divorce should be made upon the committee of such lunatic; whereas the Act of 1843 authorized the filing of a libel in divorce *by* a relative or next friend of a wife who was a hopeless lunatic,

the *affidavit to the libel* to be made by such relative or next friend. Subpoenas in divorce are not served upon libellants but upon respondents, and the provision in the Act of 1905 that service of the subpoena in divorce shall be made upon the committee of the lunatic, shows that it authorized the filing of a libel in divorce *against* a lunatic husband or wife, as *respondent,* while the Act of 1843 only authorized the filing of a libel *on behalf of* a lunatic wife as *libellant;* so, too, in clause C of the Act of 1905 it was provided that no divorce shall be granted under said Act "to any petitioner or libellant unless it be proved beyond a reasonable doubt that the husband or wife of the petitioner [libellant] is hopelessly insane"; and the Act of 1905 expressly provides (Clause E) that it "shall in no way interfere or prevent an insane wife from obtaining a divorce from a husband, as provided in the Act of April 13, 1843, to which this is a supplement."

In 1915 (Act of April 21, 1915, P. L. 154) it was enacted "That in all proceedings for divorce the libellant shall be fully competent to prove all the facts, though the respondent may not have been personally served with a libel, subpoena, or rule to take depositions, and may not be residing within the Commonwealth, but has been served by publication only." We think the purpose of the General Assembly in passing this Act was to make the libellant a fully competent witness as to all the facts, in all cases where jurisdiction to bring the action and obtain a decree existed and service had been made pursuant to law, even as to non-resident respondents who were only constructively served by publication, and that it applies to cases where a committee of a lunatic respondent has been personally served on the latter's behalf and has appeared, answered and defended on behalf of said lunatic.

The General Assembly of this Commonwealth has been liberal in its recognition of causes for divorce and in its authorization to libellants to testify as to such

causes, while it requires *strict proof* of the establishment of such causes of divorce by *clear and satisfactory evidence.* To grant a husband or wife the right to bring his or her libel in divorce against a hopelessly insane spouse, for grounds existing before such insanity, provide for service of the subpoena in divorce on a committee to be appointed for such lunatic spouse, and then deprive the innocent spouse of the opportunity of testifying as to the facts justifying a divorce, would be, as respects cruel and barbarous treatment and indignities to the person and *wilful and malicious* desertion, a cruel and tantalizing statute, for while outside evidence is generally necessary to corroborate the libellant in all cases, it is well nigh impossible to secure a divorce on the grounds just abovementioned without the testimony of the libellant. We think the General Assembly intended to give relief to an innocent libellant from a spouse guilty of conduct justifying a divorce, who subsequently becomes hopelessly insane, and with that, as well as other sufficient purposes in mind, made a libellant, who has obtained any lawful service on a respondent, a fully competent witness to testify as to all facts; and certainly so, where there has been a general appearance entered *in behalf of* the respondent and defense made on her behalf.[2]

That was the state of the law on the subject when the Divorce Code of 1929 (Act of May 2, 1929, P. L. 1237) was passed. Sections 18, 25, 30, 45, 50 and 53 of the Code retain and clarify all of the provisions of

---

[2] Act of July 10, 1935, P. L. 644, amending section 31 of the Divorce Code of 1929, provides: "The respondent may, in any case brought under the provisions of this act, cause an appearance to be entered, and file an answer to the petition or libel, and the entry of a general appearance shall be equivalent to personal service of the subpoena and libel. The entry of a general appearance by, or *in behalf of,* a respondent shall not be deemed collusion." The phrase 'in behalf of' clearly means the entry of an appearance for the respondent, by a proper person. The record in this case shows that besides entering his appearance, the committee filed

prior acts hereinbefore referred to; and the Act of May 18, 1937, P. L. 719, amending section 30 of the Code, which became effective September 1, 1937, simplifies and makes more definite the proceedings for serving process on the lunatic respondent.

We are, accordingly, of opinion that the court below erred in holding that the libellant was not a competent witness, and as the testimony, including his evidence, fully warranted a decree of absolute divorce, the decree of the court below is reversed and the record is remitted with directions to enter a decree of divorce from the bond of matrimony which the libellant contracted with the respondent, including therein, if the court deems proper, a decree for reasonable alimony for the support of the insane wife during the term of her natural life. Costs to be paid by libellant.

an answer, secured from libellant a payment on account of his counsel fee, obtained an order for alimony pendente lite of $6 per week, attended all of the master's hearings, examined and cross-examined witnesses, filed and argued exceptions to the master's report and represented the respondent before this court. Besides this, five members of respondent's family testified in her behalf.