## Hickey, Appellant, *v.* Hickey.

512

Argued November 19, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Benjamin H. Renshaw, Jr.,* for appellant.

*M. Walton Sporkin, Jr.,* for appellee.

OPINION BY RENO, J., January 18, 1946:

This appeal is from an order discharging a rule to show cause why a previous order for permanent ali-

mony and the bond posted therefor should not be revoked and vacated.

The parties were divorced upon appellant's application on April 5, 1940, for cruelty and indignities. *Hickey v. Hickey,* 138 Pa. Superior Ct. 271, 11 A. 2d 187. Respondent was then insane and an inmate of the Norristown State Hospital. Conforming to the Divorce Law of May 2, 1929, P. L. 1237, §45, 23 PS §45, appellant was required to enter a surety bond for the payment of the alimony decreed by the court. Since July 29, 1942, respondent has not been an inmate of the hospital, and on July 13, 1944, was adjudged sane.

On September 17, 1943, she filed a petition to show cause why attachment should not issue for appellant's failure to comply with the order of court, averring arrearages in the alimony so ordered. Appellant answered her petition, and also filed a petition and rule to show cause why the order granting the alimony should not be revoked and the bond released. No answer was made thereto. After hearing, the learned court below dismissed the petition, ordered the alimony payments suspended during periods of sanity, but held that in the event insanity should recur, the payments originally ordered should be resumed for the time that the insanity continues; and that the bond remain in effect for the term of Clara Hickey's natural life. This appeal followed.

The alimony order and the bond are provided for by the Divorce Law, supra: "In case of the application of a husband for divorce from an insane wife, the court, or the judge thereof to whom the application is made, shall have power to decree alimony for the support of such *insane wife during the term of her natural life,* by requiring the libellant to file a bond, with surety or sureties if necessary, in such sum as he or it may direct, conditioned as aforesaid, before granting the divorce." (Italics supplied).

In his argument, appellant isolates the words "insane wife" from their context, and upon the premise that re

spondent is now neither insane nor a wife, he erects his contention that he has been released from the condition upon which his divorce was granted. In his reasoning, he has completely ignored the important phrase, "during the term of her natural life".

We cannot interpret statutes in this cavilling and frivolous fashion. Of course, a woman technically and legally ceases to be a wife at the moment a divorce decree becomes effective, and the expression "insane wife", viewed as a status after the granting of a decree, may be a legislative solecism. But when read in connection with the phrase, "during the term of her natural life", the legislative intent is so clear that there is no room for debate. The legislature, enacting an ancient canon of judicial interpretation, has explicitly commanded us to give effect to all the provisions of an act. Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551. It has also announced that it employs words according to their common and approved usage. Id. §33, 46 PS §533. The expression "divorced wife" is so common, even if inaccurate, that everyone understands its meaning. We do not experience the slightest difficulty in understanding that it was the clear intent of the legislature by employing the phrase, "insane wife during the term of her natural life", to enact that a court granting a decree of divorce against a woman who is insane may provide alimony for her support, and that the alimony so decreed shall be payable so long as, or whenever during the term of her natural life, she is insane.

*Emerick v. Emerick,* 116 Pa. Superior Ct. 241, 244, 176 A. 509, upon which appellant mainly relies, supports our conclusion. In that case, also involving a divorced woman who had for a period recovered her sanity, this court held that the order appealed from "should be modified so as to limit the payment of alimony during the period of respondent's insanity." It was suggested during the argument of the Emerick appeal that between the date of the order of the court below and the

argument in this court "it was necessary . . . to take the respondent back to the Warren State Hospital." Apparently both sides voluntarily submitted this circumstance arising after the appeal to the decision of this court, and we held: "The alimony should be reinstated from the date of the recommitment of respondent to the Warren State Hospital." In principle, that case cannot be distinguished from the case at bar. In fact, it rules this case.

Unfortunately, the late Judge ROSEN, who granted the decree in divorce, allowed the appellant and his surety to enter a bond which did not comply with the provisions of the Divorce Law. The bond should have been, in the terms of the act, "conditioned as aforesaid", that is, for the payment of "alimony for the support of such insane wife during the term of her natural life." Instead it provides that it shall "remain in full force and effect so long as the said respondent Clara Loretta Bailey Hickey, remains non compos mentis and an inmate of the State Hospital for the Insane at Norristown, Pennsylvania." The approval of the bond was based upon an agreement between appellant and representatives of respondent. Since appellant joined in the proceeding and agreement which produced this erroneous bond, we cannot now permit him to complain about it. Should respondent again become insane and seek to recover upon the bond while an inmate of some hospital other than the Norristown State Hospital, appellant's surety might conceivably be in a position to defend the claim, but assuredly appellant could not. However, meantime respondent or her representatives could undoubtedly require the posting of a bond which fulfills the requirements of the statute.

Appellant's final contention that respondent's failure to file an answer entitled him to an order deserves only enough comment to inform him that when a petition remains unanswered the only effect, in the absence of a statute or a rule of court, is that respondent admits

only the facts averred in the petition. Whether the petitioner is entitled to the relief he seeks upon the facts so established is still a question for the decision of the court to which it is addressed.

Order affirmed at appellant's costs.