Hedderick, Appellant, *v.* Hedderick.

Argued November 8, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*S. Y. Rossiter,* with him *Louis R. Benacci,* for appellant.

*John A. Spaeder,* with him *James E. Marsh* and *Marsh, Spaeder, Baur & Marsh,* for appellee.

OPINION BY RENO, J., January 14, 1949:

In 1946 the husband secured a divorce from his wife, since 1944 an inmate in the Warren State Hospital, and the court below, pursuant to The Divorce Law of May 2, 1929, P. L. 1237, §45, 23 PS §45, decreed that the husband pay as alimony the cost, not exceeding $15 a week, of maintaining the insane wife in the hospital, or in the custody of other persons or corporations, during the term of her natural life.

Following the decree the husband instituted a suit in equity for the partition of real estate held by him and his wife as tenants by the entireties. As a result, the wife's guardian received $3657.30 as her share of the proceeds of the partition sale. Whereupon he petitioned the court below for an order suspending the payment of alimony until such time as the wife's estate "is no longer able to pay the charges for her support and maintenance . . . and to be then reinstated". The court denied the petition, and the husband appealed.

The applicable provision, §45, supra, is: "In case of the application of a husband for divorce from an insane wife, the court, or the judge thereof to whom the application is made, shall have power to decree alimony for the support of such insane wife during the term of her natural life, by requiring the libellant to file a bond, with surety or sureties if necessary, in such sum as he or it may direct, conditioned as aforesaid, before granting the divorce."

"If the wife be the petitioner, and have sufficient means, the court, or the judge, may provide for the support of the insane husband, as provided in this section for an insane wife, if the insane husband has not sufficient estate in his own right for his support."

It will be noted that the section invests the court or judge with power to decree alimony without imposing an imperative duty or an absolute obligation to do so, and consequently confers judicial discretion upon them. Cf. *Emerick v. Emerick,* 116 Pa. Superior Ct. 241, 176 A. 509.

The section also distinguishes the husband's liability from the wife's. Where the husband is the petitioner the discretion may be exercised regardless of the wife's estate or financial status, but alimony may be decreed against a wife-libellant only "if the insane husband has not sufficient estate in his own right for his support". See 2 Freedman, Marriage and Divorce in Pennsylvania, §474. In drawing the distinction, the legislature recognized and wrote into The Divorce Law the legal obligation of the husband to support his wife even though she is possessed of individual means. *Waesch's Est.,* 166 Pa. 204, 30 A. 1124; *Bremer's Petition,* 279 Pa. 405, 123 A. 857; *Harper's Petition,* 288 Pa. 52, 135 A. 617; *Com. ex rel. Weible v. Weible,* 159 Pa. Superior Ct. 290, 48 A. 2d 161. Alimony, which signifies literally nourishment or sustenance, is an extension or prolongation of the legal obligation to support beyond the period of the existence of the marital status. 17 Am. Jur., Divorce and Separation, §496.

The conclusion is that neither the statute nor decisional law supports appellant's claim to an absolute right to a suspension of alimony while his wife's separate estate is consumed for her maintenance. His application is addressed to the sound legal discretion of the court which entered the decree of alimony, and we can interfere with its exercise only upon a showing of abuse of discretion. The facts of this case do not warrant intervention.

Circumstances can be imagined where payment of alimony should be suspended. Receipt of a large legacy, for instance, providing a certain and sufficient income to assure comfortable support for her life might release a husband's obligation to maintain his insane wife. But an estate of $3600, with the real possibility of recurring lucid intervals (during which the husband's alimony payments are suspended, *Hickey v. Hickey*, 158 Pa. Superior Ct. 511, 45 A. 2d 380), subjecting the small estate to capital expenditures for her subsistence, does not present a solid base for relief. Moreover, as Judge LAUB, whose able opinion we have been reviewing, remarked: "And again we might inquire as to who will defray the expense of her burial in the event she dies while insane; or, for that matter, who will support her following her husband's death should he predecease her?"

*Boles's Est.*, 316 Pa. 179, 173 A. 664, upon which appellant relies, throws no light upon the problem here presented. It adjudicates merely the liability *to the Commonwealth* as between a father and his insane adult son for maintenance in an insane hospital. The case does hold that the lunatic is primarily liable and that others, named in the applicable legislation, are only secondarily liable, an additional source of payment in the nature of a suretyship to which the Commonwealth may look for reimbursement. It might be that in a suit by the Commonwealth the insane wife would be compelled to pay the State; but, as between the parties in this case, the divorce decree continued and prolonged the husband's common-law, *primary* responsibility for her support and maintenance.

Order affirmed.