## Strothers v. Strothers

*Herbert C. Nelson*, for petitioner.

CORSON, J., November 7, 1949.—This case comes before the court as a result of a divorced man's petition to reduce permanent alimony ordered for the support of his former wife, who is insane. It is brought on the grounds that petitioner's remarriage and the diminution of his income make meeting the required payments difficult.

Petitioner and his first wife, Anna Elizabeth Strothers, were married on June 8, 1921. By a decree entered June 12, 1946, petitioner was granted a divorce a. v. m. on the ground of indignities. At the same time he was ordered to pay the sum of $27.50 a month for the support of Mrs. Strothers during the term of her natural life, since she was then, as she is now, confined

to the Norristown State Hospital. Petitioner was also required to file a bond in the amount of $500, conditioned on his faithful performance of this duty.

Petitioner has complied with the order of the court. He supports his prayer to reduce the alimony by alleging that his income has been reduced and that he has remarried.

"In case of the application of a husband for divorce from an insane wife, the court, or the judge thereof to whom the application is made, shall have power to decree alimony for the support of such insane wife during the term of her natural life, by requiring the libellant to file a bond, with surety or sureties if necessary, in such sum as he or it may direct, conditioned as aforesaid, before granting the divorce": The Divorce Law of May 2, 1929, P. L. 1237, sec. 45, 23 PS §45.

Alimony for the support of an insane wife is the only alimony which a court can impose in Pennsylvania after a divorce a. v. m.: Commonwealth v. Scholl, 126 Pa. Superior Ct. 136 (1944).

"The just rule was early established that a decree of permanent alimony is always within the control of the court, which may increase or diminish the award upon sufficient cause shown, in order that the decree may conform at all times to the equitable rights of the parties": 2 Freedman, The Law of Marriage and Divorce in Pennsylvania, 1067, §488.

"There are no fixed rules as to the amount to be allowed. It is not to be measured solely by the wife's necessities. The husband's ability to pay, the separate estate of the wife, the character, situation and surroundings of the parties are all to be considered in determining a fair and just amount which the husband should pay to maintain the wife. The allowance of permanent alimony is based on the relative incomes of the husband and the wife, which furnish a reasonable base for making a proper allowance for the wife's mainte-

nance. Any change in these conditions, the inability of the husband to pay or the lack of necessity for the wife to receive, are proper matters for consideration by the court having jurisdiction of the petition": Karmany v. Karmany, 71 Pa. Superior Ct. 308, 310 (1919).

Permanent alimony should be reduced if the husband's income has been diminished: Meikrantz v. Meikrantz, 24 Schuyl. 401 (1928) ; Stewart v. Stewart, 79 Pitts. L. J. 134 (1930). A wife's insanity does not preclude the reduction of permanent alimony: Hedderick v. Hedderick, 163 Pa. Superior Ct. 564 (1949). Therefore, the real questions before us are whether there has been sufficient reduction in petitioner's income to warrant a reduction in the order, and whether his remarriage should be taken into consideration.

Dealing with the latter question first, we find very little Pennsylvania authority on point and a division in other jurisdictions. Some courts seem to feel that "To hold that a defendant merely by voluntarily assuming a second matrimonial responsibility could, thereby, relieve himself in whole or in part from discharging the duties imposed upon him by law with respect to the former, would suggest an easy way to evade the obligation to a wronged and injured wife; and would be inconsistent with the settled policy of our law": Heard v. Heard, 116 Conn. 632, 166 Atl. 67, 69 (1933).

However, other courts have taken the view that the rights of innocent third parties should be considered and that a defendant's remarriage *may* be *one of the factors* which should be considered in a petition to reduce alimony. See Dietrick v. Dietrick, 99 N. J. Eq. 711, 134 Atl. 338 (1926) ; Lamborn v. Lamborn, 80 Cal. App. 494, 251 Pac. 943 (1926). But compare Williams v. Williams, 12 N. J. Misc. 641, 174 Atl. 423 (1934). The cases are collected in 112 A. L. R. 246, 64 A. L. R. 1270, and 30 A. L. R. 79.

In 27 C. J. S. 995, it is said:

"The remarriage of the husband to another does not preclude modification of the amount of alimony decreed to his wife. On the contrary, such remarriage is a circumstance to be considered on an application for modification, and may warrant a reduction to enable him to fulfill his obligation to support his second wife and his children by his second wife, although it is not of itself a ground for vacating or reducing an allowance of alimony, even though it is a drain on his financial resources."

In Pennsylvania a divorced man's remarriage has been one of the factors considered on a petition to lower a support order entered for a minor child: Raudenbush v. Raudenbush, 32 Luz. 243 (1938).

In Hooks v. Hooks, 123 Pa. Superior Ct. 507 (1936), a husband's remarriage was mentioned when a decree of permanent alimony was vacated, although the court was more influenced by the fact that the wife seemed to have little need of the money.

Judge Rhodes, who wrote the opinion in the Hooks case, reasoned that the legislative policy was more and more to put husband and wife in the same position in matters of divorce; that if the husband was entitled to an absolute divorce as the result of the conduct of the wife, then it was reasonable that he should be fully restored to the single state, as the decree provided, with no ensuing obligations.

It should be noted that no inference can be made that the legislature intended that a divorce from an insane wife was to be conditioned on a promise to support her for the duration of her insanity. No order need be placed on a husband at all if the court does not deem it proper. It is a matter within the court's discretion: Garner v. Garner, 37 Berks 187 (1945); Hedderick v. Hedderick, 163 Pa. Superior Ct. 564 (1949). In view of this fact and the reasoning in the Hooks case, we

believe that a husband's remarriage may well be one of the circumstances which should influence a decree for permanent alimony of an insane wife.

To avoid misunderstanding, it should be repeated that we have said "one of the circumstances." In this case, for example, there are several others. The expenditure required on the part of the State to support this woman, the fact that two of petitioner's children have become of age and another child has reached the age of 18, and petitioner's income all should be borne in mind.

When it comes to petitioner's wages, we see that the master who heard the testimony for the divorce found that his weekly average wage at that time (1946) was $40 to $50 after deductions. This finding was based on petitioner's own evidence.

Although no specific figures are used in the petition to reduce the alimony, petitioner avers that he now makes less than he did when the order was entered. This assertion is not supported by the brief that his attorney submitted, for in that it is stated that his present take home pay is $55.80 a week. Assuming this figure to be correct, plaintiff earns almost $250 a month. Bearing in mind that the costs to maintain the patients at the Norristown hospital have increased since the decree was entered, an order of $27.50 a month, which does not cover those increased costs, does not seem unreasonable—even though petitioner has remarried. We therefore feel that the order should not be reduced.

And now, November 7, 1949, the prayer of the petition is denied and refused, and the order of June 12, 1946, requiring the payment of $27.50 a month to the chief desertion and probation officer of this court during the term of the natural life of Anna Elizabeth Strothers is to remain in full force and effect.