City of Reading v. Atlantic Refining Company

*Alan M. Hawman, Jr.,* assistant city solicitor, and *Daniel H. Huyett, 3rd,* city solicitor, for plaintiff.

*Hull, Leiby & Metzger* and *Bertolet & Bertolet,* for defendant.

HESS, J., August 19, 1954.—The City of Reading, plaintiff, instituted an action of assumpsit against Atlantic Refining Company, defendant, seeking to collect certain mercantile license taxes claimed to be due and owing to plaintiff by defendant for the year 1952 and a portion of the year 1953 under ordinance no. 50, enacted by plaintiff on November 16, 1949. Defendant contends that no tax is owing for the reason that the amount claimed is sought to be levied and collected as a license tax on merchandise manufactured by defendant in Pennsylvania and sold by it in the City of Reading. The parties agree that the dispute involves the answer to the following question: Does section 1(A)-(4) of the so-called Home Rule Act of June 25, 1947, P. L. 1145, as amended by the Act of May 9, 1949, P. L. 898, 53 PS §2015.1, prohibit the imposition of a mercantile license tax by the City of Reading for the years 1952 and 1953, based upon gross receipts from sales made within the limits of the city of goods and merchandise manufactured by the seller? The parties stipulated that the case be tried by a judge sitting as judge and jury.

### Findings of Fact

1. City of Reading is a municipal corporation of the third class, located in Berks County, Pa.

2. Defendant is a Pennsylvania corporation having its principal office at No. 260 South Broad Street, Philadelphia 1, Pa., and at the time hereinafter mentioned was engaged in the retail sale of automotive gasoline, oil and related products at No. 630 Franklin Street in the City of Reading, Berks County, Pa.

3. Bill no. 50, an ordinance enacted by the Council of the City of Reading on November 16, 1949, provided, inter alia, that the City of Reading shall levy and collect, commencing with the year 1950, and annually thereafter, a mercantile license tax based upon the actual gross amount of taxable business transacted by the taxpayer during the entire preceding calendar year on every person engaged in any following occupation or business in the City of Reading at the rate hereinafter set forth:

"(a) Wholesale vendors or dealers in goods, wares and merchandise, at the rate of one (1) mill on each dollar of the volume of the annual gross business transacted by him;

"(b) Retail vendors or dealers in goods, wares and merchandise, all persons engaged in conducting restaurants or other places where food, drink or refreshments are sold, at the rate of one and one-half (1½) mills on each dollar of the volume of the annual gross business transacted by him;

"(c) Wholesale and retail vendors or dealers in goods, wares and merchandise, at the rate of one (1) mill on each dollar of the volume of the annual gross wholesale business transacted by him, and one and one-half (1½) mills on each dollar of the volume of the annual gross retail business transacted by him."

4. Section 1(d) of the ordinance provides as follows:

"The terms 'Person,' 'Wholesale dealer,' 'Wholesale vendor,' 'Retail dealer', and 'Retail vendor' shall not include . . . any person vending or disposing of articles of his own growth, production or manufacture for shipment or delivery from the place of growth, production or manufacture thereof."

5. Defendant was engaged in the business of the retail sale of automotive gasoline, oil and related products at No. 630 Franklin Street, Reading, Berks

County, Pa., during the year 1950 and continuously since then until February 28, 1953.

6. Defendant's place of business aforesaid was a service station or gasoline station of the usual type catering to the driving public.

7. During the year 1951 defendant sold at retail, at this service station, products which it had purchased from others of the total volume of $13,470.66, and products of its own manufacture of the total gross volume of $102,158.73.

8. During the year 1952 defendant sold at retail, at this service station, products which it purchased from others of the total gross volume of $14,892.44, and products of its own manufacture of the total gross volume of $113,689.04.

9. The products of its own manufacture so sold by defendant were not manufactured at its aforesaid service station, but were all manufactured at defendant's Point Breeze Refinery in Philadelphia, Pa.

10. Defendant has paid on account of its liability for the mercantile tax for the year 1952 the sum of $20.21.

11. The city's ordinance provides as follows:·

"Every person subject to the tax imposed by this ordinance who has commenced his business at least one (1) full year prior to the beginning of any license year shall on or before the fifteenth day of April following file with the Treasurer a return setting forth his name, his business and business address, and such other information as may be necessary in arriving at the actual gross amount of business transacted by him during the preceding calendar year and the amount of the tax due."

12. The city's ordinance provides as follows:

"Payment—At the time of filing the return the person making the same shall pay the amount of tax shown as due thereon to the Treasurer."

13. The city's ordinance provides as follows:

"If for any reason the tax is not paid when due in each year, interest at the rate of six per centum (6%) per annum on the amount of said tax, and an additional penalty of one per centum (1%) of the amount of the unpaid tax for each month or fraction thereof during which the tax remains unpaid shall be added and collected. Where suit is brought for the recovery of any such tax, the person liable therefor, shall, in addition, be liable for the costs of collection and the interest and penalties herein imposed."

## Discussion

We have adopted and found as facts all of the findings of fact suggested by plaintiff. In so doing, we are not to be understood as in any way disapproving those suggested by defendant. In the opinion of the trial judge the findings of fact submitted by both parties are factually in agreement and raise no relevant or material variance insofar as the issues involved for decision are concerned.

The mercantile tax imposed by the City of Reading was enacted under authority of the provisions of the Act of June 25, 1947, P. L. 1145, as amended by the Act of May 9, 1949, P. L. 898, 53 PS §2015.1. Under the statute in question, the city is forbidden to levy a tax, inter alia, ". . . on any privilege, act or transaction related to the business of manufacturing, the production, preparation or processing of minerals, timber and natural resources, or farm products, by manufacturers, by producers and by farmers with respect to the goods, articles and products of their own manufacture, production or growth".

Defendant contends that the sale of products of its own manufacture is a privilege, act or transaction related to the business of manufacturing, and that the city may not impose its mercantile tax on sales by defendant of products of its own manufacture.

In H. J. Heinz Co. v. Pittsburgh, 170 Pa. Superior Ct. 435, 437, the Superior Court held that a similar mercantile license tax imposed by the City of Pittsburgh could not be levied on and include " 'receipts from sales from appellant's own manufacturing establishment in Pittsburgh of goods manufactured in appellant's plants elsewhere' ".

In the case before us we have a variation from the facts in the case cited in that the goods manufactured by defendant were not sold "from appellant's own manufacturing establishment" but were sold from a store or service station operated by defendant separate and apart from its manufacturing plant. The lower court in the Pittsburgh case considered that the facts now before us were included within the facts of the case decided by it, but the Superior Court found otherwise, saying, p. 437:

"We need not decide whether the court was right in concluding that a valid assessment may be based on such sales of goods" (sales from stores distinct from places of manufacture). H. J. Heinz Co. v. Pittsburgh, supra, however, must be read and considered as authority for the proposition that it is of no moment whether the sales are made from manufacturing establishments where the articles are themselves manufactured or are manufactured at other places of manufacture within the territory of the taxing authority, or are manufactured in establishments situate outside of the limits of the taxing authority. In all such situations the municipality would appear to be prohibited from levying a mercantile license tax as being violative of the restriction provisions of the 1949 amendment to the Home Rule Act, supra, ". . . that such local authorties shall not have authority by virtue of this act . . ." to levy and collect a tax ". . . on any privilege, act or transaction related to the business of manufacturing. . . ." We have re-

maining the problem of whether a tax measured by sales made from stores of defendant operated apart from any of its manufacturing establishments is prohibited as a tax ". . . on any privilege, act or transaction related to the business of manufacturing . . .".

Plaintiff contends that this court in construing the Home Rule Act, supra, should read the statute in the light of the legislative and judicial history of mercantile taxes in Pennsylvania as applied to manufacturers. An early example of this type of legislation is the Act of April 22, 1846, P. L. 486, which imposed a tax upon dealers and upon all persons concerned in the manufacture of goods, wares and merchandise who shall keep a store for the sale of them, except "mechanics who keep a store or warehouse at their own shop or manufactory, for the purpose of vending their own manufactures exclusively".

Subsequent decisions of the appellate courts were concerned largely with determining what manufacturers were entitled to the exemption. In Norris Brothers v. The Commonwealth, 27 Pa. 494, it was contended that a manufacturer of locomotives was not exempt from the tax because the company did not manufacture every part put into the locomotive. The Supreme Court held that the company was a mechanic or manufacturer within the exemption clause. In Commonwealth v. Vetterlein, 214 Pa. 21, it appeared that sales of cigars manufactured by that defendant at a place other than the establishment where cigars were both manufactured and sold were brought into issue insofar as the exemption under the Act of 1846, supra, was concerned. The court decided that it was immaterial that the cigars were not sold at the place where they were manufactured and as long as they were sold at a place where similar cigars were manufactured, the manufacturer was entitled to the benefit of the exemption.

The cases just cited and others that might be included demonstrate that under the language of the exemption provision in the Act of 1846, and similar statutes, the courts were concerned not with deciding what "is a privilege, act, or transaction related to manufacturing", but were involved in a determination of what constituted a sale made from a shop or manufactory of the vendor. We cannot conclude that the legislative and judicial history of mercantile taxes in Pennsylvania is of any real aid in answering the question now before us.

The original so-called Home Rule Act of 1947 contained some provisions limiting the power of local municipalities to levy taxes, but included no exemptions insofar as manufacturers were concerned. The Act of May 9, 1949, P. L. 898, under section 1(A)(4) among other things prohibited the levying of a tax on "(1) goods and articles manufactured in such political subdivisions; (2) or on the by-products of manufacture; (3) or on any privilege, act or transaction related to the business of manufacturing". (Numerical grouping supplied.)

When exemption was accorded to articles manufactured it was, of course, necessary to define such goods as being limited to those manufactured in the political subdivision; otherwise, goods and articles manufactured anywhere would have been entitled to the exemption. It might be argued that the language of the exemption includes goods manufactured in the political subdivision regardless of whether they are sold by the manufacturer or by a dealer, but we are not called upon to decide that question. By exempting byproducts of manufacture, the legislature went a step further in favoring the exclusion of manufacturers generally. The final clause exempting "any privilege, act or transaction related to manufacture" indicates conclusively the legislative intention to ex-

tend the exemption. The legislature might well have limited the exemption as was done in the Act of 1846, supra, by stating that it shall apply solely to "mechanics who keep a store or warehouse at their own shop or manufactory, for the purpose of vending their own manufactures exclusively".

Since no such limitation was provided, we fail to see how the court can read a limitation into the plain words of the statute.

"The propriety of taxing all who are able to pay taxes and thus dividing as equally as possible the pressure of the public burdens, is very earnestly urged. But that is a consideration which can have no weight against the words of a statute. The people have consented to tax themselves only through their representatives annually elected. The power has not been entrusted to us": Norris Brothers v. The Commonwealth, supra, p. 496.

It is true that statutes containing tax exemptions must be construed strictly: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58(5); McGuire et al. v. Pittsburgh School District, 359 Pa. 602. We are required, however, to give effect to all the provisions of a statute, Statutory Construction Act, supra, sec. 51; and to construe the words of a legislative enactment "according to their common and approved usage": Id., sec. 33; Hickey v. Hickey, 158 Pa. Superior Ct. 511. In the light of these mandates it is difficult to understand how the statute in question conferring an exemption "on any privilege, act or transaction related to the business of manufacturing" could be construed to exempt from a mercantile license tax sales made from a place of manufacture regardless of where the article sold was manufactured (H. J. Heinz Co. v. Pittsburgh, supra) and then conclude that sales of a manufacturer's own products are taxable if such sales are made in a store or estab-

lishment of the maker or producer apart from a manufacturing plant. Certainly, a privilege related to manufacturing is the right to sell the product regardless of how, where or when it is sold.

"But the sale of the products of manufacture is an essential part of the business of manufacturing; the power to manufacture implies the power to sell what it thus produced": H. J. Heinz v. Pittsburgh, supra, p. 439.

"The Legislature might have classified manufacturers as dealers also, and subjected them to a tax as such, except as to goods sold from the place of manufacture, but it has not done so. It apparently is a part of the policy of the Legislature of Pennsylvania in fostering industry to reserve to itself the taxation of manufacturing in all of its phases": Id., p. 440.

In the case of The Isaly Dairy Co. of Pittsburgh v. City of Pittsburgh et al., no. A. 382 of 1953, the County Court of Allegheny County held that a dairy that manufactured its articles in a Pittsburgh plant and sold its products in its own stores throughout that city, under a similar mercantile license tax, was not required to pay the tax on sales made from those stores. In the case before us, we have an additional circumstance that the manufacturer's plant making the articles in question is not located in the City of Reading, the taxing municipality. In view of the broad language of H. J. Heinz v. Pittsburgh, supra, which does not distinguish between manufacturing plants located within and without the municipality levying the tax, and of Commonwealth v. Vetterlein, supra, in which the court concluded that goods manufactured at a taxpayer's plant outside of the City of Philadelphia should be included in the same category as similar articles manufactured at the Philadelphia plant, we cannot find that the place of manufacturing is material to the question we are considering.

It is our conclusion that sales of products manufactured by defendant in its plant in Philadelphia, Pa., and sold in its store or service station in Reading, Pa., are exempt from the levy of a mercantile license tax under the ordinance of plaintiff for the years 1952 and 1953. Defendant concedes that it is liable for the tax on sales of products manufactured by others and sold in its Reading service station, and it is the understanding of the trial judge that the parties will agree to a proper computation of the tax and penalties owing by reason of such sales.

### Conclusions of Law

1. Ordinance No. 50, enacted by the City of Reading on November 16, 1949, was adopted under the authority conferred upon various political subdivisions of the Commonwealth of Pennsylvania by the so-called Home Rule Act of June 25, 1947, P. L. 1145, as amended, by the Act of 1949, P. L. 898, and to the extent that Ordinance no. 50 purports to impose any tax not clearly authorized by said Home Rule Act, such ordinance and the tax purported to be imposed must be deemed illegal, null and void.

2. The Home Rule Act of 1947, P. L. 1145, as amended, is a statute delegating the taxing power of the Commonwealth to various political subdivisions, subject to certain specific reservations and, accordingly, this act must be strictly construed in limitation of delegated taxing powers.

3. Section 1(A) of the Home Rule Act of 1947, P. L. 1145, as amended, 53 PS §2015.1(A) specifically prohibits any taxation by political subdivisions on any privilege, act or transaction related to the business of manufacturing, and the sale of a manufactured product by the manufacturer thereof is a privilege, act or transaction related to the business of manufacturing and, as such, the gross receipts therefrom may

not be subjected to local taxation under any ordinance adopted under the authority of such Home Rule Act.

4. The mercantile tax which the aforesaid ordinance no. 50 purports to impose for the years 1952 and 1953 based upon the gross receipts derived by defendant from sales of products of its own manufacture at its gasoline service station in the City of Reading, constitutes a tax on a privilege, act or transaction related to the defendant's business of manufacturing, which tax is prohibited by the Home Rule Act of 1947, P. L. 1145, as amended.

5. The circumstance that defendant's sale of products of its own manufacture were not made at a place of manufacture located within the City of Reading is immaterial in this case and does not change the fact that the selling of products of its own manufacture was a privilege, act or transaction related to defendant's business of manufacturing, within the intent of section 1(A) of the Home Rule Act of 1947, P. L. 1145, as amended.

6. Ordinance no. 50 is illegal and void insofar as it purports to impose mercantile tax based upon the gross receipts derived by the defendant from retail sales in the City of Reading of products of its own manufacture.

7. The claim of the City of Reading against defendant for mercantile tax for the years 1952 and 1953 must be limited to such amount of tax as is due on the basis of defendant's gross receipts from sales in the City of Reading of products other than those of its own manufacture.

8. Verdict should be entered for the City of Reading and against the Atlantic Refining Company for the tax owing, which tax, together with interest, penalties and credits due, will be computed by the parties in accordance with the foregoing and presented to the trial judge for entry of a proper verdict.