## Brustolin Estate

*John M. Kurtz, Jr.* and *Elbert N. Pusey,* for accountant.

*John N. Hoffman,* for guardian.

*Dallett Hemphill,* for Commonwealth.

*A. M. Larmore* and *Fred T. Cadmus, III,* for legatees.

MACELREE, P. J., August 29, 1961.—Decedent, a married man, leaving to survive him a spouse and issue, died October 13, 1958, leaving a will dated May 24, 1958, which was duly probated and upon which letters testamentary were granted October 20, 1958.

By the terms of his will, decedent provided, inter alia, as follows:

"SECOND. To my wife LOUISE BRUSTOLIN, now confined to Wernersville State Hospital, I leave Two Thousand Dollars ($2,000).

"THIRD. My car I leave to my daughter, JOAN L. HOYT.

"FOURTH. My gold watch, ring, jewelry and luggage, I leave to my grandson, HAROLD L. HOYT.

"FIFTH. To each of my nephews and nieces, I leave Three Thousand Dollars ($3,000).

"SIXTH. To SUE DICECCO, of Kennett Square, Pa., I leave all of my building loan shares and stock now held in the Progressive Building and Loan Association of Kennett Square, Pa., also all of the stock now held by me in American and Canadian corporations.

"The remainder of my estate, real, personal and mixed whatsoever kind and nature, and wheresoever the same may be situate, of which I shall be seized or

possessed, or to which I may be in any way entitled at the time of my death, I give, devise and bequeath to my grandchildren, to be equally divided between them. Should there be only one grandchild, he shall receive all of this grant. This grant must be placed in trust for his or their education or until he or they shall attain the age of twenty-one (21). To be his or theirs absolutely."

By proceedings duly had in the Orphans' Court of Chester County, the National Bank and Trust Company of Kennett Square was appointed guardian of the estate of Louise Brustolin (decedent's incompetent surviving spouse) by decree of the Orphans' Court of Chester County, dated March 26, 1959.

Thereafter, on May 4, 1959, there was filed with the Clerk of the Orphans' Court of Chester County a certain paper writing, captioned, "Notice of Election."

Said paper writing was, as follows:

"NOTICE OF ELECTION

"TO MRS. EUGENE BERTOOLI, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF ANGELO BRUSTOLIN:

"TO THE REGISTER OF WILLS AND CLERK OF THE ORPHANS' COURT OF CHESTER COUNTY:

"TO THE LEGATEES, DEVISEES AND CREDITORS OF THE ESTATE OF ANGELO BRUSTOLIN:

"YOU WILL PLEASE TAKE NOTICE that the National Bank & Trust Company of Kennett Square, Pennsylvania, guardian of the estate of Louise Brustolin, an incompetent, widow of the said Angelo Brustolin, deceased, does hereby elect to take against the will of the said decedent, dated May 24, 1958, and in lieu thereof to take and receive her share of said estate under the intestate laws and requests you to record and

file this notice in accordance with the Act of Assembly in such case made and provided.

> "The National Bank & Trust Company of Kennett Square
> By: /s/ Charles T. Porter    (SEAL)
>                    President

ATTEST: /s/ Richard T. Worrall
       Secretary"

Said election, on behalf of the incompetent widow, was filed without the approval of the Orphans' Court of Chester County first having been obtained.

Thereafter, January 17, 1961, and prior to audit, the said guardian filed a petition praying the court to "authorize the election by it, as Guardian of the Estate of Louise Brustolin, an incompetent, nunc pro tunc."

Based upon said petition, citation was awarded directed to all parties in interest to show cause why the said election should not be approved by the court and be allowed nunc pro tunc.

To such citation, an answer was filed by Sue Di-Cecco, a legatee as by reference being had thereto will more fully and at large appear, protesting the authority of the orphans' court to grant the prayer of the petition of the said guardian.

After hearing, testimony on said citation, this court, on April 1, 1961, entered a decree approving said election nunc pro tunc as of the date of its filling, and as set forth in said decree the reasons for this court's approval thereof are hereinafter set forth.

There was presented at audit a claim on behalf of the Commonwealth of Pennsylvania in the amount of $11,709.41 for the care and maintenance of decedent's surviving spouse, Louise Brustolin, at Wernersville State Hospital.

By stipulation filed and incorporated herein by reference thereto, the amount of said claim is admitted

by counsel for all parties, subject to determination by this court as to the source of payment of such claim, which source of such payment is hereinafter discussed and payment directed to be made in accordance with this adjudication . . .

Further questions were submitted to the court as to the order of abatement of legacies in the event of the election of the widow's guardian to take against the will being approved and as to who are entitled to take under the residuary clause of the decedent's will . . .

It unquestionably has been and is case law in Pennsylvania that the guardian of a weakminded person cannot elect, on behalf of its ward, to take against the will of the latter's spouse, unless empowered to do so by the court: Harris Estate, 351 Pa. 368, 379, 383.

It is further the law in Pennsylvania that the orphans' court has no power *after the death of the ward* to approve nunc pro tunc an election to take against the will, even though executed, recorded and filed by the guardian, without sanction or order of the court, during the lifetime of the ward within a year of the death of the spouse and the taking out of letters: Gerlach's Estate, 127 Pa. Superior Ct. 293.

Gerlach's Estate stresses two principles of law: (a) The guardian had no statutory power to elect and it could only act as directed and empowered by the court; (b) no such action having been taken during the lifetime of the ward, upon the death of the ward, the guardian's authority to proceed ceased.

In reversing the lower court, the appellate court stated (p. 302) :

"The guardian . . . presented no petition to the court, while its ward was living, asking that an election to take against the will . . . be made; . . . After the ward's death no action as to an election was within the power of either court or guardian."

To the same effect is a comprehensive opinion of Judge Shoyer in Strecker Estate, 20 D. & C. 2d 652.

Quoting the statutory provisions of the Wills Act of 1947, as amended, Judge Shoyer noted:

". . . section 8(a) creates this right of election and extends the privilege only to 'the surviving spouse while living.' Section 11 provides that 'the spouse's election shall be in time if [made] within one year after the probate of the will' . . . Section 12(b) states clearly and precisely: 'Personal right. The right of election shall be personal to the surviving spouse and shall not be exercised *after his death.*' " (Italics supplied.)

Judge Shoyer then quotes the appended comment of the Joint State Government Commission.

Approval nunc pro tunc was refused in Strecker Estate, as stated by Shoyer, J.: "Here our court had had no opportunity to act on the guardian's petition because it had not been filed with us prior to the death of the ward."

Quoting from Crozier's Appeal, 90 Pa. 384, 387, Judge Shoyer added:

" '. . . So long as the lunatic elector lives, the court, as guardian, is invested with the power of choice; but when the fountain dries up in death, all that has life in it dies also. In short, if no election is made by the widow during life when she is competent to act for herself, or by the court when she is not, the right is defeated in either case, the time and opportunity are past, and it never was intended that any election should be made after her death. It could do her no good, and the good of others was not in the view of the lawmaker . . .' "

Concerning the instant question before this court, the court has been unable to find any reported case involving the precise facts present in the subject estate.

Here, the statutory requirements have been met and the only remedial step available to conform to case law requirements *was taken* during the lifetime of the ward.

Here, we have a situation where counsel for the corporate guardian, having filed an election in ignorance of case law requirements as to the court's approval, did, within the lifetime of the ward and prior to audit, when it came to the guardian's attention that court approval was required, act promptly to seek such approval nunc pro tunc.

For this court to penalize its ward because of counsel's ignorance of case law and failure to advise the guardian of its requirements until shortly before audit, would, in the opinion of this court, be not only inequitable, but unconscionable, whereas, here, the court believes that its discretion should properly be exercised in favor of the widow for reasons similar to those discussed in German's Case, 318 Pa. 200.

We, therefore, conclude that the prayer of the guardian merits approval, and the allowance thereof is a proper exercise of judicial discretion.

Accordingly, the decree, heretofore entered April 1, 1961, is reaffirmed in this adjudication for the foregoing reasons, and there will be awarded in distribution to the guardian of the estate of the surviving spouse that share of decedent's estate to which she would be entitled under the Intestate Act of the Commonwealth of Pennsylvania, to wit: one-half of the net balance for distribution.

That there is due the Commonwealth of Pennsylvania the sum of $11,709.41 for the care and maintenance of Louise Brustolin, at Wernersville State Hospital, from June 1, 1944, to October 13, 1958, the date of death of decedent is not disputed.

Neither is it disputed that the obligation arose during the lifetime of decedent.

Concerning that situation, the question submitted to this court is whether decedent's estate is liable for such cost of maintenance or whether the separate estate acquired by the widow by reason of the election allowed on her behalf is primarily liable.

Counsel for claimant asserts the first as the proper source, while counsel for the accountant and the guardan ad litem contend that such costs should be paid from the share awarded the guardian of the widow.

Counsel for the accountant, and as well, the guardian ad litem place great stress upon Boles' Estate, 316 Pa. 179.

We do not construe Boles' Estate as being decisive of this question; rather, we share the opinion expressed by the late Judge Reno, in Hedderick v. Hedderick, 163 Pa. Superior Ct. 564, 567:

"*Boles's Est.*, . . . adjudicates merely the liability *to the Commonwealth as between a father and his insane adult son* for maintenance in an insane hospital. . . ." (Italics supplied)

We further believe the question submitted to us is properly answered in Liberty Bank and Trust Company v. Commonwealth, 85 D. & C. 279, by Henninger, P.J.

"The real question," stated Judge Henninger, (p. 284) "is, then, whether the Mental Health Act of 1951 . . . has subordinated the unquestioned common-law primary and absolute liability of the husband for his wife's support to the exhaustion of her private estate."

In disposing of the question stated, he held in a declaratory judgment proceeding, noted above, and we adopt his conclusions of law, to wit: Section 701 of the Mental Health Act of June 12, 1951, P. L. 533, providing that liability for the maintenance of a patient in a State institution is imposed in the following order, against (1) the patient's estate; (2) the persons liable

for the patient's support; and (3) The Commonwealth was not intended to change common-law liability and, whatever the order of payments may now be, the order of liability remains as follows: (1) The incompetent's husband; (2) the incompetent's estate; (3) the incompetent's children; (4) the Commonwealth.

We believe in reaching such a conclusion and in adopting the language of Judge Henninger, that such a conclusion is not in conflict with Boles' Estate.

We, therefore, conclude that the liability of decedent's estate for the support of his mentally incompetent wife is a common-law liability, absolute and primary, and we order and decree payment to the Department of Revenue of the Commonwealth of Pennsylvania from the balance in the hands of the accountant of the sum of $11,709.41 for the care and maintenance of Louise Brustolin at Wernersville State Hospital up to October 13, 1958, and the said amount is herewith allowed as an additional credit to the accountant.

The account as stated indicates the balance for distribution to consist, inter alia, of certain United States Series E Bonds carried at a value of $24,046.60 and of a claim due from the partnership of Brustolin and Hoyt in the amount of $2,380.46, later reduced as per testimony of the accountant to $1,980.46.

At the direction of the court, the Series E Bonds were converted, as of August 1, 1961, for a total sum of $26,385.72, showing a net gain over the value stated in the account of $2,339.12, which will be added to the balance for distribution.

It further appears by affidavit of the accountant that the claim of decedent's estate against the partnership of Brustolin and Hoyt, in the amount of $1,980.46, is valueless and uncollectible, and accordingly will be deducted from the balance for distribution.

It now is ascertained after payment of claims against decedent's estate and the allowance of addi-

tional credits, hereinbefore approved, and payment of the distributive share under the election on behalf of the surviving spouse, that there are insufficient assets remaining for distribution from which to pay all of the specific and pecuniary legacies provided in decedent's will, leaving no residuary estate for distribution.

Except as otherwise provided by the will of decedent, section 751 of the Fiduciaries Act of April 18, 1949, P. L. 512, as amended, provides for the situation here present and by statute directs which shares of distributees shall have priority of distribution.

Decedent's will containing no provisions otherwise, distribution will be awarded according to the priorities established by statute . . .