470 A.2d 981

**Nanci Ann HOPKINSON**

v.

**John Hebden HOPKINSON, III, Appellant.**

**Nanci Ann HOPKINSON**

v.

**John Hebden HOPKINSON, III, Appellant.**

**Nanci Ann HOPKINSON**

v.

**John Hebden HOPKINSON, III.**

**Appeal of ABINGTON OB/GYN, LIMITED PENSION PLAN.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1983.

Filed Jan. 6, 1984.

Petition for Allowance of Appeal Denied May 11, 1984.

406

Frank L. Newburger, III, Philadelphia, for appellant (at Nos. 1501 & 1662) and for appellee (at No. 1786).

Randal J. McDowell, Jenkintown, for appellant (at No. 1786).

John H. Martin, III, Norristown, for Nanci Hopkinson, appellee.

Before CIRILLO, JOHNSON and CERCONE, JJ.

CIRILLO, Judge:

The parties in this action were married on June 22, 1957 and divorced on May 1, 1978. They adopted two children, John and Elizabeth, during the marriage, both of whom are minors. On February 28, 1978 the parties entered into a written agreement which, *inter alia*, provided that the husband pay to the wife an annual sum of $23,500.00, installments to be paid weekly, together with an amount equal to the federal, state and local income taxes owed by the wife. In addition, the agreement stipulated that the husband was to pay the wife $5000.00 per year, payable weekly, as support for each unemancipated child. Pursuant to the agreement, the wife had custody of both children. Subsequent to the divorce, however, John expressed a desire to reside with the husband. Consequently, the parties entered into an agreement on April 12, 1979 which ratified the earlier agreement, except for the change in John's custody. Included in this second agreement was a provision that, notwithstanding the change in custody, the husband was still required to pay $5000.00 per annum to the wife for the support of their son John.

The wife filed a Complaint in Equity in the Court of Common Pleas of Montgomery County on June 5, 1981,

alleging that the husband was in breach of his obligations under the property settlement agreement. On February 11, 1982 the parties appeared before the Honorable Horace A. Davenport and agreed to the entry of a consent decree. Judge Davenport's decree, dated February 12, 1982, ordered the husband to pay the wife the sum of $21,541.91 forthwith and to comply thereafter in all respects with the agreement of February 28, 1978, as amended on April 12, 1979.

On August 13, 1982 the wife filed a petition for reduction of arrearages to judgment. The court entered an order on August 27, 1982 directing that judgment be entered against the husband in the amount of $12,642.18. This total represents arrearages due under the consent decree for the period of February 12, 1982 through August 20, 1982.

On October 20, 1982 the wife filed a petition seeking to hold the husband in contempt of court based on his willful violation of the consent decree. A hearing was held on November 23, 1982 before the Honorable Louis D. Stefan. At the hearing the wife established the claims of nonpayment set forth in her petition while the husband testified as to his inability to meet his obligations. At the conclusion of this hearing, the court decided that the husband had failed to make a reasonable attempt at complying with the consent decree and found him in contempt. By Order dated March 2, 1983, the husband was to pay $5000.00 to the wife within 30 days and the remaining arrearages within 120 days, and to comply with the terms of the consent decree in a timely fashion thereafter. The husband appealed this Order to the Superior Court. By an Order dated April 27, 1983, this Court quashed the appeal. A hearing was then held before Judge Stefan to determine the sanctions to be imposed by reason of the husband's failure to comply with the Order of March 2, 1983. By Order of June 8, 1983 Judge Stefan committed the husband to the county prison each weekend, until such time as he purged himself of the contempt by paying the sum of $5000.00 to the wife. The husband appealed this Order to the Superior Court.

Meanwhile, in November, 1982 a Writ of Execution was served, *inter alia,* on Abington OB/GYN, Ltd. Pension Plan and Profit Sharing Plan and interrogatories addressed to the garnishee were propounded. Both the husband and the garnishee filed preliminary objections to the interrogatories, alleging that the Writ of Execution and the interrogatories were improperly served and that the pension fund is immune from attachment. These preliminary objections were dismissed by the Honorable Samuel W. Salus, II in an Order dated June 2, 1983. The husband and the garnishee appealed this Order to the Superior Court. All appeals were subsequently consolidated for disposition by this Court. *See:* Pa.R.A.P. 513; 42 Pa.C.S.A.

The first issue on appeal concerns the propriety of the lower court order holding the husband in contempt and the sanction of imprisonment on weekends until he purges himself of the contempt. The lower court relies on Section 501(f) of the Divorce Code [1] as authority to imprison the husband. This section provides:

> (f) Whenever the court shall approve an agreement for the payment of alimony voluntarily entered into between the parties, such agreement shall be deemed the order of the court and may be enforced as provided in section 503.

The lower court concluded that the consent decree, ordering the husband to comply with the terms of the property settlement agreement, constituted court approval under section 501(f), and thus, the agreement may be enforced pursuant to Section 503 of the Divorce Code.[2] This section authorizes imprisonment for willful failure to comply with a court-approved agreement for the payment of alimony. However, Section 103 of the code [3] provides in pertinent part:

> ... The provisions of this act shall not apply to any case in which a decree has been rendered prior to the effective

1. Act of April 2, 1980, P.L. 63, No. 26, § 501, 23 P.S. § 501(f).

2. *Id.,* 23 P.S. § 503(1).

3. *Id.,* 23 P.S. § 103.

date of the act. This act shall not affect any marital agreement executed prior to the effective date of this act or any amendment or modification thereto.

■ The parties were divorced and the property settlement agreement was executed and amended before the Divorce Code became effective in July of 1980. Therefore, the court improperly based its actions on this statute.

■ We may affirm the lower court, though, if its decision can be sustained on any ground whatsoever, without regard to the reason the trial court relied upon. *In re: Martorano,* 464 Pa. 66, 346 A.2d 22 (1975); *Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 437 A.2d 417 (1981); *Sones v. Aetna Cas. & Sur. Co.,* 270 Pa.Super. 330, 411 A.2d 552 (1979).

■ The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980); *Commonwealth v. Haefner,* 470 Pa. 392, 368 A.2d 686 (1977). A court may exercise its civil contempt power to enforce compliance with its orders or decrees if its purpose is to compel performance and not to inflict punishment. *Barrett v. Barrett,* 470 Pa. 253, 368 A.2d 616 (1977); *Petition of Specter,* 439 Pa. 404, 268 A.2d 104 (1970); *Commonwealth v. Feick,* 294 Pa.Super. 110, 439 A.2d 774 (1982). The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of civil contempt by complying with the court's directive. *In re Martorano, supra; Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976). A consent decree, although negotiated by the parties, is a judicial act which is enforceable via the court's contempt power.[4] *Usery v. Chef Italia,* 540 F.Supp. 587 (E.D.Pa.1982); *Delaware Valley Citizens' Council v. Commonwealth of Penn-*

---

4. A consent decree, in the absence of fraud or mistake, is conclusive and binds the parties. *Sarsfield v. Sarsfield,* 251 Pa.Super. 516, 380 A.2d 899 (1977); *See:* GOODRICH AMRAM 2d, § 1519(a):1.

*sylvania,* 533 F.Supp. 869 (E.D.Pa.1982), aff'd, 678 F.2d 470 (3rd Cir.1982).

■ It is clear that the husband's flagrant and willful disregard of the lower court's orders in this matter, by his inaction in fulfilling his duties of support, justify his adjudication of contempt. So too, his imprisonment on weekends, until he purges himself of contempt, is a proper sanction to be imposed by the lower court for this civil contempt. To hold otherwise would render the Court of Common Pleas powerless to effectively implement its directives while, at the same time, allow the husband to escape his obligations under a valid, counselled separation agreement.

The husband argues that he attempted, in good faith, to comply with the lower court orders, but due to his financial situation, he is unable to perform.

... [T]he justification for imprisonment in civil contempt ceases once it becomes apparent that the contemnor lacks the present ability to purge himself and thereby bring himself into compliance with the order; a court should not in effect convert civil proceedings into criminal ones by imposing terms for compliance which are apparently impossible for the contemnor to perform.

*Muraco v. Pitulski,* 470 Pa. 269, 273, 368 A.2d 624, 626 (1977); *See also: Yurt v. Brumage,* 289 Pa.Super. 88, 432 A.2d 1064 (1981); *Biggan v. Foster Twp. Zoning Hearing Bd.,* 272 Pa.Super. 513, 416 A.2d 575 (1979).

The lower court, in an Opinion authored by Judge Stefan, found as follows:

The instant record supports the Court's finding that the defendant has not made a good faith effort to comply with the consent decree. (Findings of Fact 5, 11/23/82). The defendant has failed to demonstrate financial inability to perform. By way of examples, the defendant has maintained a membership at a country club at a cost of $1800 per year (N.T. 95, 125, 11/23/82) and purchased season tickets for professional ice hockey games (N.T. 112, 125, 11/23/82).

(Lower Ct. Slip Op. at 4). *See: Commonwealth ex rel. Novack v. Novack,* 310 Pa.Super. 112, 456 A.2d 208 (1983).

■ We have reviewed the record in this matter and agree with the lower court's findings. We have found nothing in the record occurring in June, 1981 which would have worsened the husband's financial position and caused him to reduce his weekly child support and alimony obligations from $644.00 to $96.00. The husband voluntarily incurred a substantial debt when in June of 1979, after his divorce and well after he entered into the property settlement agreement, he entered into an agreement to purchase certain real estate, which amounted to indebtedness of $163,000.00. However, the husband assumed this debt knowing full well his support obligations under the property settlement agreement. There is no evidence that the husband has tried to meet his obligations, yet there is substantial evidence that he has the monetary capacity to do so in light of his lucrative medical practice. Moreover, the husband has not demonstrated a good faith effort to even comply with the consent decree to the extent he is able. *See: Department of Environmental Resources v. Pennsylvania Power Company,* 461 Pa. 675, 337 A.2d 823 (1975). It appears from the record that the husband simply does not want his familial support responsibilities to interfere any longer with his current lifestyle. The defense of financial inability to comply with the court order is, thus, not applicable to the husband. *Compare: Muraco v. Pitulski, supra.* Accordingly, we affirm the Order of the lower court, dated June 8, 1983.

The next question for our review is whether the service of the Writ of Execution, directed to the garnishee, Abington OB/GYN Ltd. Pension Plan and Profit Sharing Plan, was sufficient to confer jurisdiction in the lower court over the pension fund of the professional corporation.

As regards service upon a garnishee, we look to Pa.R. C.P. 3111(a) which provides in pertinent part:

> (a) The writ shall be served upon the garnishee in the same manner as a writ of summons in assumpsit except as otherwise provided by Rule 3112 and 3113.

Service in an assumpsit action is dealt with in Pa.R.C.P. 1009(d) as follows:

> (d) Service upon the following defendants may be made as provided by the following rules: A political subdivision, Rule 2104; a partnership, Rule 2131; an unincorporated association, Rule 2157; a corporation or similar entity, Rule 2180.

Our Supreme Court has held that a pension fund is considered a "similar entity." *Myhalyk v. Lewis*, 398 Pa. 395, 158 A.2d 305 (1960). Consequently, service of the Writ of Execution in this case must be made in compliance with Pa.R.C.P. 2180 which, in relevant part, reads as follows:

> (a) Service of process within the county in which the action was commenced shall be made upon a corporation or similar entity by the sheriff of that county by handing an attested or certified copy of the process, as prescribed by Rule 1008,
>
> > (1) to an executive officer, partner or trustee of the corporation or similar entity; or
> >
> > (2) to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity; or
> >
> > (3) to an agent authorized by the corporation or similar entity in writing to receive service of process for it.

■ Service was made upon one Sue Caum, the receptionist at the offices of Abington OB/GYN Ltd. corporation. The Sheriff's return of service clearly indicates that Ms. Caum represented to the deputies that she was the person in charge at the time of service. Therefore, under Pa.R. C.P. 2180(a)(2), service was made upon a proper person of the similar entity.

■ So too, service was properly made at 1245 Highland Avenue, Abington, Pennsylvania, the office of Abington OB/GYN Ltd. The pension plan trustees are the husband

and his two partners, collectively known as Abington OB/GYN Ltd., P.C. The pension fund was created by these trustees and each maintains his principal office at the address where the Writ of Execution was served. It is obvious that the place where the service was made was also the office of the pension fund. Hence, service of the Writ of Execution was sufficient to enable the lower court to exercise jurisdiction.

 The husband also argues that the property sought to be garnished is exempt from attachment pursuant to Section 1056(d) of the Employee Retirement Income Security Act of 1974 (ERISA).[5] The Abington OB/GYN Ltd. retirement trust agreement provides in Paragraph 10.1 as follows:

> To the extent permitted by law, the benefits or payments or proceeds and any allocated or unallocated portion of the assets in the Fund and any interest of any Participant or Beneficiary arising out of or created by the Plan or Plans either before or after retirement shall not be subject to execution, attachment, garnishment or other legal or judicial process whatsoever by any person, whether creditor or otherwise, except the Plan or Plans and Trust, and then only as to indebtedness of the Participant due it, claiming against such Participant or Beneficiary.

In the case of *American Telephone & Telegraph Company v. Merry*, 592 F.2d 118 (2nd Cir.1979), the court held that ERISA does not preempt state law with respect to family support orders and that the alienation and assignment prohibitions of ERISA do not apply to such orders. The court reasoned:

> The purpose of the proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealings with third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiar-

5. 29 U.S.C.A. § 1056(d).

ies reap the ultimate benefits due upon retirement. *See Cody v. Riecker*, 454 F.Supp. [22] at 25.

Our finding of an implied exception is not only in furtherance of Congress's concern for the well-being of employees and their dependents as expressed in ERISA § 2(a), 29 U.S.C. § 1001(a), but is also consistent with the federal policy of enforcing support obligations...

592 F.2d at 124.

The consent decree of February 12, 1982 concerned the payment of alimony, child support and taxes. Thus, under the holding and reasoning of the court in *Merry*, the pension and profit sharing plans are garnishable for the purpose of fulfilling the husband's support obligations under the consent decree. *See also: Knapp v. Johnson*, 301 N.W.2d 548 (Minn.1980) (The dependent of a beneficiary was entitled to garnish the beneficiary's interest in an ERISA-regulated plan for the purpose of satisfying support and alimony obligations).

■ Finally, the husband contends that the pension and profit sharing plans are exempt from attachment pursuant to 42 Pa.C.S.A. § 8124(b). In germane part, this section reads:

(b) Retirement funds and accounts.—

(1) Except as provided in paragraph (2), the following money or other property of the judgment debtor shall be exempt from attachment or execution on a judgment:

. . . . .

(vii) Any pension or annuity, whether by way of a gratuity or otherwise, granted or paid by any private corporation or employer to a retired employee under a plan or contract which provides that the pension or annuity shall not be assignable.

(viii) Any retirement or annuity fund of any self-employed person (to the extent of payments thereto made while solvent, but not exceeding the amount actually excluded or deducted as retirement funding for Federal

income tax purpose) and the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder.

With regard to the predecessor of Section 8124(b),[6] this Court (per Judge HESTER) opined:

Clearly, these types of statutes were specifically drawn to protect the beneficiary's family so he (or she) could not voluntarily or by means of creditor judgments, dissipate the assets and leave his family without a means of support. In view of this, we decline to interpret the Act of 1917, *supra* to protect a delinquent husband's pension funds from attachment for support.

*Commonwealth ex rel. Magrini v. Magrini*, 263 Pa.Super. 366, 370–71, 398 A.2d 179, 181 (1979).

We agree with this rationale. If the purpose of exemption clauses, like the one in section 8124(b), is to prevent the dissipation of one's pension so that he can support his family, then to prevent an attachment, whose purpose is to discharge the same obligation that the exemption clause was created to protect, would be unjust. *See: Commonwealth ex rel. Magrini v. Magrini, supra.*

Accordingly, we hold that in this instance, in an effort to satisfy familial support obligations, the husband's share of the professional corporation's pension and profit sharing plans are not exempt from attachment under 42 Pa.C.S.A. § 8124(b). The Order of June 2, 1983 is hereby affirmed.

Order affirmed.

**6.** This predecessor section stated in relevant part:
... and any annuity or pension, whether by way of a gratuity or otherwise, granted or paid by any private corporation or employer or out of a trust fund established by any private corporation or employer to a retired employe, being a citizen of this Commonwealth, under an agreement, plan or trust indenture which provides that the same shall not be assignable or subject to execution or attachment, shall be exempt and free and clear from the claims of all his or her creditors, and from all legal and judicial processes of execution, attachment, or otherwise, whatsoever.
Act of May 3, 1917, P.L. 112, § 1, *as amended,* 40 P.S. § 515.