554 A.2d 45

**Eleanore STINNER, Appellant,**

**v.**

**Donald E. STINNER and Bethlehem Steel Corporation, Appellees.**

Supreme Court of Pennsylvania.

Argued April 11, 1988.

Decided Feb. 8, 1989.

Jackson M. Sigmon, Mark S. Sigmon, Bethlehem, for appellant.

James R. Fiorentino, Alfred P. Antonelli, Bethlehem, Dona S. Kahn, Philadelphia, Kathleen M. Mills, Bethlehem, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

STOUT, Justice.

This is an appeal from a decision of the Superior Court that affirmed a decision of the Court of Common Pleas of Northampton County that refused to enforce Appellant Eleanore Stinner's writ of execution to garnish Appellee Donald E. Stinner's pension plan in order to recover sums due Appellant for alimony. We reverse.

The question for decision is whether the Order of February 5, 1980,[1] which was entered in enforcement of the parties' property settlement agreement of June 10, 1977, which contained a provision for the payment of alimony to the wife until death or remarriage,[2] is a qualified domestic

1. The Order reads:
    AND NOW, this 5th day of February, 1980, plaintiff's motions for summary judgment are granted. In the matter captioned at 1979–C–7428 (assumpsit) judgment is entered in favor of plaintiff Eleanore Stinner and against defendant Donald E. Stinner in the amount of $8,666.72.
    In the matter captioned at 1979–CE–7429 (equity) it is hereby ordered that defendant Donald E. Stinner specifically perform his obligation to pay weekly support payments of $250.00 to Eleanore Stinner until her death or remarriage, and that he become current in said payments within thirty days of the date of this order.

2. The third paragraph of the agreement reads:

relations order within the meaning of Section 206(d) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982), as amended by the Retirement Equity Act of 1984, 29 U.S.C. § 1056(d) (1982 & Supp. III 1985).

The pertinent sections of the Act read:

Section 1056

(d) **Assignment or alienation of plan benefits**

(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

. . . .

(3)(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, *except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order.* Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

(B) For purposes of this paragraph—

(i) the term "qualified domestic relations order" means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraph[ ] (C) . . . are met, and

Commencing as of June 6, 1977, and continuing until September 1, 1978, HUSBAND shall pay as alimony to WIFE for her maintenance the sum of Three Hundred and 00/100 ($300.00) Dollars per week. After September 1, 1978, HUSBAND shall pay as alimony to WIFE the sum of Two Hundred Fifty and 00/100 ($250.00) Dollars per week, said payments to continue for the remainder of WIFE's natural life or until such time as she should remarry, whichever shall first occur. HUSBAND shall deposit into the checking account of WIFE the sums payable hereunder two times per month commencing as of June 6, 1977.

(ii) the term "domestic relations order" means *any judgment, decree, or order (including approval of a property settlement agreement )* which—

(I) relates to the provision of child support, *alimony payments,* or marital property rights to a *spouse, former spouse,* child or other dependent of a participant, and

(II) is made pursuant to a *State domestic relations law* (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

29 U.S.C. § 1056(d) (1982 & Supp. III 1985) (emphasis added). *See also* S.Rep. No. 575, 98th Cong. 2d Sess., *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 2547, 2564–68 (summary of statute).

■ We hold that the Order in question is a qualified domestic relations order, that it is exempt from the anti-alienation provision of the Act, and that Appellant may garnish Appellee's pension to satisfy the Order.

Donald and Eleanore Stinner were married January 28, 1956. Some twenty-one years and seven months later, on September 6, 1977, they were divorced. About two and one-half months prior to divorce, the Stinners entered into a property settlement agreement which provided, among other things, that Mrs. Stinner, who had custody of their two daughters then ages sixteen and seventeen, would remain in the family home, and that Mr. Stinner would pay Mrs.

Stinner alimony in specified sums for the rest of her natural life or until she remarried.[3]

Mr. Stinner honored the agreement for only eighteen months.

On July 2, 1979, Mrs. Stinner filed a complaint in assumpsit for breach of the agreement and a complaint in equity to enforce it. The trial judge entered judgment for $8,666.72 in the assumpsit action and ordered specific performance in the equity action. This Order was affirmed without opinion. *Stinner v. Stinner*, 296 Pa.Super. 645, 440 A.2d 1262 (1981).

Mr. Stinner still did not pay.

On July 26, 1985, Eleanore Stinner filed two writs of execution on Appellee Bethlehem Steel Corporation to garnish Mr. Stinner's pension, which Bethlehem Steel established under the provisions of ERISA. Bethlehem Steel refused to comply with the garnishment on the ground that the writ of execution served upon the plan administrator was not a qualified domestic relations order under ERISA, because it:

(1) Was not "made pursuant to a state domestic relations law" [ERISA § 206(d)(3)(B)(ii)(II), 29 U.S.C. § 1056(d)(3)-(B)(ii)(II) ];

(2) Did not state "the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the Order" [ERISA § 206(d)(3)(C)(i), 29 U.S.C. § 1056(d)(3)(C)(i) ];

**3.** In addition, the agreement set forth the understanding of the parties on other domestic relations matters. It imposed on Mr. Stinner the duty to provide funding for the children's education, to maintain Blue Cross and Blue Shield coverage for them, and it set forth his visitation rights. It also provided that he should claim the children as exemptions for federal income tax purposes. He agreed to maintain his wife and children as irrevocable beneficiaries under a Metropolitan Life Insurance policy, which was provided "as a benefit of his employment with Bethlehem Steel Corporation," and to repay a $5,000 loan Mrs. Stinner made to him.

(3) Did not "clearly specify . . . the amount or percentage of the participant's benefit to be paid by the Plan to [Plaintiff], or the manner in which such amount or percentage is to be determined" [ERISA § 206(d)(3)(c)(ii), 29 U.S.C. § 1056(d)(3)(C)(ii)]; and

(4) Did not specify "the number of payments or the period to which such order applies" [ERISA § 206(d)(3)(c)(iii), 29 U.S.C. § 1056(d)(3)(C)(iii)].

Appellant sought relief from the Court of Common Pleas of Northampton County which, on January 20, 1986, denied and dismissed her writ, holding that neither the writ of execution nor the Order upon which it was based could be treated as a "qualified domestic relations order." On April 6, 1987, Mrs. Stinner met a similar fate when the Superior Court held that her right to alimony was based solely on contract and not on the domestic relations law of Pennsylvania and that, therefore, enforcement of the agreement for alimony payments could not be accomplished by attaching Mr. Stinner's pension plan. *Stinner v. Stinner*, 362 Pa.Super. 219, 523 A.2d 1161 (1987).

We agree that a writ of execution is not a qualified domestic relations order. A writ of execution puts in force the judgment or decree of a court. *Black's Law Dictionary* 1444 (5th ed.1979). The judgment that it attempted to put in force, however, is not based solely on contract but is a qualified domestic relations order based on the decisional domestic relations law of Pennsylvania.

Domestic relations begin happily with marriage and end permanently and sadly in one of two ways, either by death or divorce. If they end by divorce, the parties must follow the law of the jurisdiction in which the divorce is obtained. That law, whether statutory or common law, is the domestic relations law of that state, and orders entered pursuant to that law are domestic relations orders.

In holding that Mrs. Stinner's right to alimony was based solely on contract and not on the domestic relations law of

this Commonwealth, the Superior Court took a myopic view of the word law. According to *Black's Law Dictionary,* law is derived either from judicial precedents, from legislation or from custom. *Id.* at 795–96. The custom in Pennsylvania before June 30, 1980,[4] was that it was common to induce spouses to forego divorce contests by entering into support agreements. *See Hollman v. Hollman,* 515 Pa. 288, 528 A.2d 146 (1987). Moreover, section 514(c) of ERISA, as amended by the Retirement Equity Act of 1984, defines the term "State law" to include "all laws, *decisions,* rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1) (1982 & Supp. III 1985) (emphasis added).[5] Prior to June 30, 1980, although there was no statutory right to alimony after divorce, except where a spouse was insane or was suffering from serious mental disorder,[6] or obtained a divorce from bed and board,[7] alimony by separation agreement, even though made in contemplation of divorce, was valid, legal, and enforceable. *See Lurie v. Lurie,* 246 Pa.Super. 307, 370 A.2d 739 (1976) (citing cases).

It was pursuant to this decisional law of the Commonwealth of Pennsylvania that the Stinners, in 1977, entered

---

4. On that date, the Pennsylvania legislature enacted a comprehensive divorce code. 1980 Pa. Laws 26, 23 Pa.Stat.Ann. §§ 101–801 (Purdon Supp.Pamph.1988).

5. The general definition section of ERISA, 29 U.S.C. § 1002 (1982 & West Supp.1988) nowhere defines "state law." Accordingly, we turn to § 1144(c)(1) for guidance. Moreover, the fact that the statute says "pursuant to *a* state domestic relations law" (emphasis added) does not compel the conclusion that Congress intended to encompass only a statute, as opposed to the common law. The committee reports were silent on the intention of Congress. *See* S.Rep. No. 575, 98th Cong., 2d Sess., *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 2547; H.R.Rep. 655(I), 98th Cong., 2 Sess. (1984); H.R.Rep. 655(II), 98th Cong., 2d Sess. (1984). Clearly, if Congress had intended a statute, it would have said so.

6. 1972 Pa. Laws 202, *amending* 1929 Pa. Laws 430, *codified at* 23 Pa.Stat. § 48, *repealed by* 1980 Pa. Laws 26, 23 Pa.Stat.Ann. §§ 101–801 (Purdon Supp.Pamph.1988).

7. 1929 Pa. Laws 430, 23 Pa.Stat. § 47, *repealed by* 1980 Pa. Laws 26, 23 Pa.Stat.Ann. §§ 101–801 (Purdon Supp.Pamph.1988).

into the agreement for alimony. Upon the breach of that agreement the Court of Common Pleas, which had jurisdiction to enforce alimony agreements, entered the Order of February 5, 1980, which the writ of execution sought to enforce.

Having decided that the Order of February 5, 1980, is based on the decisional domestic relations law of this Commonwealth, we turn to ERISA to determine whether the Order is a qualified domestic relations order within the meaning of the Act, and thus exempt from the alienation clause.

The Order of February 5, 1980, meets all but one minor requirement of a qualified domestic relations order. It was related to alimony payments for a spouse who became a former spouse. It was made pursuant to the decisional domestic relations law of Pennsylvania regarding alimony. It specified the amount of the participant's benefits to be paid and the period to which the Order applied.[8] The Order named the participant and the alternate payee.

The only deficiency in the Order itself was that it did not contain the last known mailing address of either party. This, however, is not a fatal defect. The legislative history of the Act is instructive in this regard. There it is written:

> The committee intends that an order will not be treated as failing to be a qualified order merely because the order does not specify the current mailing address of the participant and alternate payee if the plan administrator has reason to know that address independently of the order.

S.Rep. No. 575, 98th Cong., 2d Sess., *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 2547, 2566.

Obviously, the names of the participant and alternate payee are known to the plan administrator. The address of the participant is known to the plan administrator and, if the address of the alternate payee is not known to him, he

8. *See supra* note 2.

has reason to know it independently from one of three sources readily available to him—his records, the records of the Court of Common Pleas, which entered the domestic relations order, or from the participant. But for the lack of one easily-ascertainable address, the rights of the alternate payee should not be lost.

■ The purpose of ERISA's proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealing with third parties. The provision is not intended to alter traditional support obligations, but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement. *American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118, 124 (2d Cir.1979); *Cody v. Riecker*, 454 F.Supp. 22, 25 (E.D.N.Y.1978); *Hopkinson v. Hopkinson*, 323 Pa.Super. 404, 415–16, 470 A.2d 981, 987 (1984).[9]

The result here is consistent with our decision in *Hollman v. Hollman*, 515 Pa. 288, 528 A.2d 146 (1987) (under the pension exemption statute of this Commonwealth, 42 Pa.Cons.Stat.Ann. § 8124(b)(1)(vii) (Purdon 1982), pension fund attachable pursuant to judgment for alimony based on separation agreement). *See generally Young v. Young*, 507 Pa. 40, 488 A.2d 264 (1985) (discussing Pennsylvania policy of permitting attachment of pensions to satisfy support orders).

The Order of the Superior Court is reversed.

McDERMOTT, J., concurs in the result.

ZAPPALA, J., files a dissenting opinion.

**9.** *See also* H.R.Rep. No. 533, 93rd Cong., 1st Sess. 8, *reprinted in* 1974 *U.S.Code Cong. & Admin.News* 4639, 4646. It instructs that ERISA's most important purpose will be to assure American workers that they may look forward, with anticipation, to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society.

ZAPPALA, Justice, dissenting.

In order to be considered as a qualified domestic relation order under Section 1056(3)(B)(i) of the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. §§ 1001–1461 (1982), as amended by the Retirement Equity Act of 1984, 29 U.S.C. § 1056(d) (1982 and Supp. III (1985)), a primary requisite is that the order give a spouse a specific interest in the subject pension proceeds. Because the majority fails to recognize this requirement, I must dissent.

Section 1056(3)(B)(i) states as follows:

(i) The term "qualified domestic relations order" means a domestic relations order—

(I) which *creates or recognizes the existence of an alternate payee's right to* or assigns to an alternate payee the right to, *receive all or a portion of the benefits payable* with respect to a participant under a plan, ... (Emphasis added)

Thus, before a spouse is entitled to receive any share of pension proceeds, that amount must be spelled out in the support order. For example, a court may order a spouse to pay $100 a month in alimony and 50% of that spouse's pension. The specific designation regarding the pension enables the order to be recognized as a "qualified domestic relations order" as that term is defined under the Act.

In the appeal *sub judice*, the Appellant is attempting to enforce a support agreement which provided for the payment of $250 per week for life. The Appellant appears to have leaped over the first hurdle by having her support agreement incorporated into a court order. See Majority Slip Opinion at 2, fn. 1. This does not alleviate the Appellant's second hurdle, however, which is to obtain a specific order assigning an interest in the pension plan. While the Appellant does have, at least arguably, a domestic relation order, the order of February 5, 1980, is not a "qualified domestic relations order." Therefore, there is no authority under the Act to attach the Appellee's pension.