[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves a novel legal issue related to the enforcement of child support orders; specifically, whether funds from an ERISA pension plan may be assigned to a former spouse toward payment of a child support arrearage owed by the pensioner. A brief review of the case's background is necessary before addressing this issue.
The marriage of the plaintiff and the defendant Viola Fradiani, formerly known as Viola Iannotti, was dissolved by the court, Hauser, J., on May 2, 1986. The court ordered the defendant Viola Fradiani to pay child support to the plaintiff in the amount of $60.00 per week. The court also found an arrearage of $1,734.00 which it ordered to be paid at a rate of $10.00 per week.
Various modification and enforcement proceedings not relevant to the issues at hand followed. On April 3, 1996, Family Support Magistrate Kochiss-Frankel granted the defendant's request to modify the child support order. The child support order was modified from the then existing $155.00 per week to $140.00 per week. The magistrate also found a child support arrearage of $16,327.93 owing to the plaintiff and an arrearage of $820.00 owing to the State of Connecticut.[1] The magistrate ordered payment by the defendant of $11.00 per week on the arrearage owed CT Page 94-Z to the plaintiff and $1.00 per week on the arrearage owed to the State.
On August 9, 1996, the plaintiff filed a motion for modification seeking to modify the magistrate's order as to payment on the arrearage owed to him. The plaintiff alleges in his motion that the defendant Viola Fradiani now has access to substantial funds contained in a profit sharing plan. In his motion, the plaintiff asks that the defendant be ordered to liquidate the profit sharing plan and use the funds to substantially reduce her child support arrearage.
On September 4, 1996, the plaintiff filed a motion for contempt in which he alleged that the defendant Viola Fradiani failed to make payments toward the current child support and toward the arrearage as ordered by the court. The plaintiff asked that the court make such orders as it deems necessary and appropriate.
On the same date, the plaintiff also filed a motion to restrain the defendant Viola Fradiani from withdrawing, removing, disposing or encumbering the profit sharing plan. The motion was granted by the court on September 4, 1996.
On September 10, 1996, plaintiff filed a motion to cite in a CT Page 94-AA party defendant. In his motion, the plaintiff asked that Dean Fradiani, the defendant's current spouse, be made a party to the action due to his interest in the defendant Viola Fradiani's profit sharing plan. The motion was granted by the court.
That same day, the plaintiff filed an amended motion for modification in which he asked for additional relief with respect to Dean Fradiani. The plaintiff requested that the defendant Dean Fradiani be ordered to execute all documents necessary to facilitate a lump sum liquidation of the profit sharing plan.
On September 25, 1996, the defendant Viola Fradiani filed a motion for modification seeking to modify the current child support and arrearage orders. The defendant Viola Fradiani also filed an objection to the plaintiff's motion to cite in Dean Fradiani as a party defendant. The objection was overruled by the court on September 25, 1996.
Three issues are currently pending before the court: (1) should the court assign the defendant Viola Fradiani's interest in the profit sharing plan to the plaintiff to pay a portion of the child support arrearage owed to him; (2) is the defendant Viola Fradiani in contempt of the magistrate's child support orders; and (3) has there been a substantial change in the financial circumstances of the defendant Viola Fradiani to CT Page 94-BB warrant modifying the magistrate's existing child support orders?
The court finds the following facts. The defendant Viola Fradiani is currently employed at Blakeslee Prestress, Inc. as a blueprint machine operator. She works part time, approximately 30 hours per week, and is paid $7.50 per hour. Her current net income is $185.00 per week.
At the time of the court's orders on April 3, 1996, the defendant Viola Fradiani was employed at Echlin Industries, also known as Automotive Controls, as an assembler. She was a full time employee, working 40 hours per week, and her net income as found by the family support magistrate was $319.00 per week.
The defendant Viola Fradiani worked at Echlin from January 9, 1996 through July 28, 1996. At that time, she voluntarily left her employment because she felt it was a sweat shop. She was subsequently terminated by the company due to her unauthorized leave of absence. At the time of her termination she was earning $9.73 per hour and working 40 hours per week.
The court finds that the defendant Viola Fradiani is substantially in arrears in her child support payments to the plaintiff. Through November 15, 1996, she owes a total of $17,314.74 in overdue child support to the plaintiff. She also CT Page 94-CC owes $735.00 to the State of Connecticut.
After leaving Echlin in July, the defendant Viola Fradiani was unemployed until September 13, 1996 when she obtained her current employment at Blakeslee Prestress. Since August 16, 1996, she has not made her child support payments as ordered on April 3, 1996 by the family support magistrate. From August 16, 1996 through November 15, 1996, she has failed to make payments totalling $1,498.81.
In 1989, after her divorce from the plaintiff, the defendant Viola Fradiani obtained employment at Ultra-Optix, Inc. She remained an employee of Ultra-Optix until August of 1995. While an employee of Ultra-Optix, the defendant Viola Fradiani was a beneficiary of a profit sharing plan. The profit sharing plan was established pursuant to the Employee Retirement Income Security Act of 1974 (ERISA). Each year the company contributed a defined amount to the plan.
The defendant Viola Fradiani is fully vested in the Ultra-Optix profit sharing plan. On October 1, 1996, she became eligible pursuant to the terms of the plan to request a lump sum distribution from the plan. As of September 30, 1996, the value of her interest in the profit sharing plan was $11,556.94.
The defendant Viola Fradiani is presently married to the CT Page 94-DD defendant Dean Fradiani. They married on October 22, 1988. Pursuant to the terms of the profit sharing plan, the defendant Viola Fradiani shall receive the value of all of her benefits in the form of a joint and survivor annuity. Such joint and survivor benefits following the defendant Viola Fradiani's death shall continue to the defendant Dean Fradiani during his lifetime and are equal to 50% of the rate at which such benefits were payable to the defendant Viola Fradiani. The defendant Viola Fradiani may elect to waive the joint and survivor annuity and obtain the sums in the profit sharing plan in a lump sum provided the defendant Dean Fradiani gives his consent.
The plaintiff has asked the court to issue an order assigning all of the defendant Viola Fradiani's interest in the profit sharing plan to the plaintiff as partial payment for the outstanding child support arrearage. The defendant Viola Fradiani asserts that the anti-alienation and preemption provisions contained in ERISA prevent the attachment of her interest in the profit sharing plan. The plaintiff claims that the exception contained in ERISA for a qualified domestic relations order authorizes such an assignment.
The Employment Retirement Income Security Act of 1974 (ERISA) was enacted to protect pension plan participants and their beneficiaries. Smith v. Mirman, 749 F.2d 181, 182 (4th Cir. CT Page 94-EE 1984). Toward that end, Congress prescribed various disclosure and reporting requirements, participation and vesting standards, fiduciary obligations, criminal penalties and civil enforcement provisions. In addition, ERISA § 206(d)(1) states that: "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056
(d)(1). ERISA also contains a preemption provision which asserts that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employment benefit plan. . . ." 29 U.S.C. § 1144 (a).
After the enactment of ERISA, federal courts were divided on the question of whether spouses, former spouses and children could claim an interest in pension benefits to satisfy family support obligations. Compare American Tel. Tel. Co. v. Merry,592 F.2d 118 (2d Cir. 1979) (which held that a garnishment order used to satisfy court ordered family support payments is impliedly excepted from the ERISA preemption and anti-alienation provisions), and Bowen v. Bowen, 715 F.2d 559 (11th Cir. 1983) (which held that a state court order withholding a former husband's retirement benefit payments for application to an alimony arrearage was exempt from the alienation and assignment proscriptions of ERISA), with Monsanto Co. v. Ford, 534 F. Sup. 57
(D.C. Mo. 1981) (which held that distribution through a marriage dissolution proceeding of a husband's interest in an CT Page 94-FF employee benefit plan which was not in "pay status" violated the anti-alienation and preemption provisions of ERISA).
In order to resolve the uncertainty, Congress passed the Retirement Equity Act of 1984. One of the primary purposes of the act was to ensure that ERISA's anti-alienation and preemption provisions could not be used to block enforcement of court orders providing for child support and alimony payments by ERISA plan participants. See Mackey v. Lanier Collection Agency and Serv.,486 U.S. 825, 838 (1988). The 1984 act amended ERISA to permit the alienation or assignment of pension benefits through a qualified domestic relations order (QDRO). 29 U.S.C. § 1056
(d)(3)(A) (effective Jan. 1, 1985).
As a result of the Retirement Equity Act of 1984, ERISA now specifically provides that the prohibition on assigning or alienating pension benefits does not apply to qualified domestic relations orders. ERISA sets out precise requirements which a court order must meet in order to be considered a QDRO.
First, a QDRO must be a domestic relations order. A domestic relations order is defined as any judgment, decree or order (including approval of a property settlement agreement), which (1) relates to the provision of child support, alimony payments or marital property rights to a spouse, former spouse, child or CT Page 94-GG other dependent of a participant and (2) is made pursuant to a state domestic relations law. 29 U.S.C. § 1056 (d)(3)(B)(ii)
Second, a domestic relations order must clearly specify (1) the name and last known mailing address of the participant and each alternate payee covered by the order, (2) the amount or percentage of the participant's benefits to be paid by the plan to each alternate payee, or the manner in which such amount or percentage is to be determined, (3) the number of payments or the period covered by the order, and (4) the pension plan covered by the order. 29 U.S.C. § 1056 (d)(3)(C).
Third, the order must create or recognize the existence of an alternate payee's right to, or assign to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan. 29 U.S.C. § 1056
(d)(3)(B)(i).
Finally, the domestic relations order must not require a pension plan (1) to provide any type or form of benefit or any option not otherwise provided under the plan, (2) to provide increased benefits, or (3) to pay benefits to an alternate payee which are required to be paid to another alternate payee under a QDRO. 29 U.S.C. § 1056 (d)(3)(D).
The order sought by the plaintiff qualifies as a QDRO because CT Page 94-HH it meets all of the requirements set forth in ERISA. The plaintiff seeks an order assigning to him the defendant Viola Fradiani's right to receive all of the benefits payable under the profit sharing plan. The order sought relates to the provision of child support to a former spouse on behalf of a child and is made pursuant to a state domestic relations law. Pursuant to statute, the court has the authority to enforce its prior child support orders. See General Statutes §§ 46b-84 (e) and 46b-215 (a). The court also has the specific authority to order executions against any real, personal or other property of a person who has failed to obey a child support order for payment of accrued and unpaid amounts due under such order. General Statutes §46b-215 (a).
The order sought in this case also does not fall victim to any of the prohibitions delineated in ERISA. It would not provide any type or form of benefit not otherwise provided under the plan. It would not provide increased benefits. It would not pay benefits to an alternative payee required to be paid to another alternative payee under a QDRO.
Finally, an order could be drafted to meet the requirements of ERISA with respect to specifying names and last known addresses, amount of benefits to be paid, the number of payments or period, and the pension plan covered by the order. CT Page 94-II
While Connecticut's appellate courts have not yet addressed the issue, the conclusion that a court order assigning pension benefits in order to satisfy an unpaid child support arrearage qualifies as a QDRO exempt from ERISA's anti-alienation provision finds ample support in the case law of other jurisdictions.
As previously mentioned, the Second Circuit Court of Appeals held prior to the Retirement Equity Act of 1984 that a garnishment used to satisfy delinquent court ordered alimony and child support payments was impliedly excepted from both the anti-alienation and preemption provisions of ERISA. American Tel. Tel. Co. v. Merry, supra. The court rested its decision on the strong public policy of insuring that a spouse fulfills his family support obligations.[2]
More importantly, since the enactment of the Retirement Equity Act of 1984, courts in other states have determined that court orders assigning pension benefits to a former spouse to satisfy arrearages on support obligations are authorized by ERISA. See Taylor v. Taylor, 541 N.E.2d 55 (Ohio 1989) (in which the court held that a withholding order against a former spouse's monthly pension in order to satisfy an alimony arrearage qualified as a QDRO under ERISA); Rohrback v. Rohrback,556 A.2d 767 (Md. 1989) (in which the court held that a spouse may obtain CT Page 94-JJ a QDRO as an aid to enforcing previously entered judgment in a divorce action); Stinner v. Stinner, 554 A.2d 45 (Pa. 1989) (in which the court held that an order garnishing the former husband's ERISA benefits in order to satisfy an alimony arrearage was a qualified domestic relations order and exempt from ERISA's anti-alienation provision); In Re Marriage of Rife,529 N.W.2d 280 (Iowa 1995) (in which the court held that an order garnishing a retirement plan in order to satisfy an unpaid alimony order pursuant to a divorce was a valid QDRO under ERISA); and Baird v.Baird, 843 S.W.2d 388 (Mo.App.E.D. 1992) (in which the court held that the trial court erred in dismissing a former spouse's application for a QDRO for past due maintenance and child support).
Both the defendant Viola Fradiani and the defendant Dean Fradiani assert that the interest of the defendant Dean Fradiani in the profit sharing plan prevents the court from assigning the funds contained in the plan to the plaintiff. They are mistaken.
ERISA specifically authorizes a domestic relations order which assigns to an alternate payee the right to receive all or a portion of the benefits payable with respect to a participant under a plan. See 29 U.S.C. § 1056 (d)(3)(B)(i). Nothing in the ERISA statute prevents the assignment of a participant's right to pension benefits where the former spouse has remarried. CT Page 94-KK
Moreover, the requirement under ERISA that the spouse of the participant consent in writing applies to situations where the participant elects to waive the qualified and joint survivor annuity form of benefit. It does not apply to situations where a court issues a qualified domestic relations order assigning the participant's interest in the plan. See 29 U.S.C. § 1055
(C)(2)
The plaintiff has a greater equitable and legal claim to the funds in the profit sharing plan than does the defendant Dean Fradiani. The plaintiff is presently owed over $17,000.00 in unpaid child support on behalf of four children. He has an immediate and substantial interest in being paid. The defendant Dean Fradiani has a future interest in the profit sharing plan that is contingent on the defendant Viola Fradiani predeceasing him. His interest may never be realized.
Society places a higher value on the timely payment of child support than on the future receipt of pension benefits. This policy is illustrated by the Retirement Equity Act of 1984 which authorizes the assignment of pension benefits for the payment of family support obligations. It is also reflected in Connecticut state law by General Statutes § 52-321a, which exempts retirement income from the claims of all creditors except CT Page 94-LL pursuant to a qualified domestic relations order. See also General Statutes § 52-350a, et seq., which exempts family support judgments from the ban on post judgment attachment of retirement income. The certainty that children are financially supported today outweighs the possibility of a spouse receiving annuity benefits in the future.
The plaintiff and the State of Connecticut also seek to have the court find the defendant Viola Fradiani in contempt of the family support magistrate's child support orders. It is undisputed that the defendant Viola Fradiani has not fully complied with the orders issued on April 3, 1996. Since August 16, 1996, she has made only partial payments toward those orders, and is $1,498.81 in arrears.
The defendant Viola Fradiani claims that she has failed to make those payments because she lost her job at Echlin Automotive Control Company. However, her loss of that job was entirely of her own doing. She took a leave of absence without permission and without following company policy. She made no attempt to regain her employment after the company dismissed her.
She voluntarily left the job, earning $9.73 per hour and working 40 hours per week, which gave her the ability to comply with the court's child support order. She has made no effort to CT Page 94-MM obtain a job to supplement the income she is receiving from her part time job at Blakeslee Prestress.
The defendant Viola Fradiani deliberately violated the court's child support orders. She lacks adequate justification for doing so because she intentionally left her employment at Echlin and she failed to procure a job with comparable pay.
A court order assigning the defendant Viola Fradiani's interest in the Ultra-Optix Profit Sharing Plan to the plaintiff to satisfy a portion of the outstanding child support arrearage is necessary to enforce the court's prior child support orders. Such an order is appropriate pursuant to this court s statutory authority, General Statutes §§ 46b-84 (e) and 46b-215 (a), and under the court's contempt powers, Clement v. Clement, 34 CONN. APP. 641 (1994).[3]
The defendant Viola Fradiani seeks to have the child support orders of April 3, 1996 modified on the grounds that there has been a substantial change of circumstances due to her reduction in income.[4] Her net weekly income has decreased from $319.00 found by the magistrate on April 3, 1996 to her net weekly income of $185.00 today. However, as previously stated, the defendant Viola Fradiani voluntarily left her job at Echlin Automotive Controls thereby reducing her income. Under such circumstances, CT Page 94-NN it is appropriate for the court to base its child support determinations on the party's earning capacity.
It is a well recognized principle that a court in a dissolution proceeding may base financial awards on the earning capacity rather than the actual earned income of the parties.Miller v. Miller, 181 Conn. 610, 611-12 (1980). "This principle is particularly applicable where, as here, the person to be charged has intentionally terminated his employment thereby substantially reducing or eliminating his actual earnings." Careyv. Carey, 29 Conn. App. 436, 440 (1992).
The earning capacity of the defendant Viola Fradiani is the same as it was on April 3, 1996. She has the same skills, experience and work history to procure a full time job paying $9.37 an hour. She needs to do so.
The court enters the following orders:
1. The defendant Viola Fradiani's motion for modification is denied.
2. The plaintiff's motion for contempt is granted.
3. The plaintiff is assigned all the interest of the defendant Viola Fradiani in the Ultra-Optix profit sharing plan CT Page 94-OO toward satisfying the outstanding child support arrearage. The plaintiff is directed to draft a qualified domestic relations order assigning all of the defendant Viola Fradiani's interest in the profit sharing plan to the plaintiff. The QDRO is to be submitted by the plaintiff to the defendant Viola Fradiani and the plan administrator for their review and to the court for its approval. The court retains jurisdiction to approve the QDRO.
4. The court's order restraining the use of the profit sharing plan by the defendant Viola Fradiani remains in effect until further order of the court.
Alander, J.